IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF<br>ELECTRICAL WORKERS, LOCAL<br>1357,<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN TELCOM, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 15-00221 SOM/KJM<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND DEFENDANT'S COUNTERMOTION<br>FOR SUMMARY JUDGMENT |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DEFENDANT'S COUNTERMOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

        Before the court are Plaintiff International
Brotherhood of Electrical Workers, Local 1357's motion for
summary judgment and Defendant Hawaiian Telcom's countermotion
for summary judgment.  The issue raised by both motions is
whether the parties must arbitrate a dispute regarding Hawaiian
Telcom's unilateral implementation of the wage schedule for a new
position.

        The new position was created in the gap between the
expiration of a collective bargaining agreement and the adoption
of a new collective bargaining agreement.  IBEW points to
provisions in the expired collective bargaining agreement that
required Hawaiian Telcom to arbitrate the dispute.  IBEW also
argues that the parties agreed to arbitrate the dispute in a

letter of understanding signed during the gap period.  Hawaiian Telcom responds that it is not required to arbitrate the dispute under the old CBA or any other agreement because it lawfully implemented the wage schedule when no CBA was in place as part of its Last, Best, and Final Offer.

For the reasons discussed below, the court denies both motions, leaving genuine issues of material fact for trial.

II.        **BACKGROUND.**

IBEW, a labor organization under the terms of the Labor Management Relations Act, 29 U.S.C. § 152, and Hawaiian Telcom, an employer under 29 U.S.C. § 152(2), were parties to a collective bargaining agreement that expired on September 12, 2011 (2008-11 CBA).  See ECF No. 15, PageID # 221.

As they were negotiating a new CBA, Hawaiian Telcom proposed a new position for "Structured Cabling Technician" ("SCT") that would be paid at wage schedule 7.  See ECF No. 14, PageID # 131.  IBEW did not agree to the proposed wage schedule because, in its view, the position should have been assigned a wage schedule 10.

On December 21, 2011, Hawaiian Telcom declared that the parties had reached an impasse over the wage schedule, and unilaterally implemented wage schedule 7 for SCTs as part of Hawaiian Telcom's Last, Best, and Final Offer ("LBAFO"),

2

effective from January 1, 2012.[1]  See id.  The parties do not dispute that the SCT position was created at a time when no CBA was in place.  The parties eventually agreed to a new CBA effective January 1, 2013.  See id.

On February 8, 2012, Hawaiian Telcom posted two SCT positions at wage schedule 7.  See id.  Within a month of the postings, but more than a month after the wage schedule was implemented in the LBAFO, IBEW filed a grievance alleging that Hawaiian Telcom had violated Article 36, specifically section 36.10, of the 2008-11 CBA in unilaterally imposing the wage schedule for the SCT position.  See id.  Section 36.10 provides in relevant part:

---

[1] Hawaiian Telcom implemented its LBAFO pursuant to federal case law that has interpreted the National Labor Relations Act, 29 U.S.C. § 151 et. seq., as entitling an employer to unilaterally implement terms and conditions regarding mandatory subjects of bargaining if a bona fide impasse is reached.  See, e.g., NLRB v. Katz, 369 U.S. 736 (1962); Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union Local 226 v. NLRB, 309 F.3d 578, 582 (9th Cir. 2002).  "Sections 8(a)(5) and 8(d) of the NLRA require parties in a collective bargaining relationship to negotiate in good faith over mandatory subjects of bargaining, including 'wages, hours, and other terms and conditions of employment.'"  Serramonte Oldsmobile, Inc. v. NLRB, 86 F.3d 227, 232 (D.C. Cir. 1996) (citations omitted); see also 29 U.S.C. § 158(d).  "Thus, neither side may take unilateral action with respect to mandatory subjects of bargaining without first satisfying the duty to bargain."  Serramonte Oldsmobile, 86 F.3d at 232 (citation omitted).  "However, because the NLRA compels only good-faith bargaining, not agreement, the parties may reach an impasse in negotiations.  At that point, the duty to bargain has been temporarily satisfied, and an employer does not violate the NLRA by making unilateral changes that are reasonably comprehended within his pre-impasse proposals."  Id. (citation, quotation marks, and brackets omitted).

> Whenever a new job is created or the job
> content of an existing job is changed the
> Company will submit a job description to the
> Union.  If the rate for the job
> classification does not appear in Article 36
> of the Agreement, it shall be determined
> jointly by the Company and the Union.   If
> the job classification appears in Article 36
> but the Union feels that the classification
> or rate for the new or amended job is not
> proper, it shall be determined jointly by the
> Company and the Union.  In the event that a
> joint agreement on a job classification
> cannot be reached within forty-five (45)
> days, the Company and the Union agree to
> begin Expedited Labor Arbitration Procedures
> in accordance with the American Arbitration
> Association rules within five (5) working
> days.

See ECF No. 24-2, PageID # 300.

Hawaiian Telcom notified IBEW by a letter dated March 9, 2012, that it was denying the grievance.  See ECF No. 14, PageID #s 131-32.  The letter explained that Hawaiian Telcom did not believe that the grievance had been timely filed in accordance with Article 9, section 9.2 of the 2008-11 CBA.  See ECF No. 14-5, PageID # 211.  Section 9.2 required a grievance to be "presented in writing to the employee's supervisor within twenty (20) days . . . of the alleged breach of the expressed terms and conditions of this Agreement. . . . Any grievance not presented within the twenty-day period shall not thereafter be considered as a grievance under the terms of this Agreement." See ECF No. 14-1, PageID #s 150-51.  The letter also stated that "the Company believes the new job was properly introduced during

4

contract negotiations and upon reaching impasse in negotiations, implemented as part of its Last, Best and Final Offer on January 1, 2012.  This grievance is not recognized as valid." ECF No. 14-5, PageID # 211.

Hawaiian Telcom sent another letter to IBEW, dated June 8, 2012, "confirm[ing Hawaiian Telcom's] decision that we will not agree to arbitrate any grievances that arose after expiration of the collective bargaining agreement on October 24, 2011." See ECF No. 14-6, PageID # 213.  Accompanying the letter was a list of the grievances that IBEW was declining to arbitrate, including the SCT wage schedule dispute.  See id., PageID #s 213-14.  IBEW filed a Step Two grievance in response.  See ECF No. 14, PageID # 132.

In a Letter of Understanding, dated December 13, 2012, both sides agreed to the following:

> 1. Arbitration.  Grievances that arose between October 25, 2011 through December 31, 2012 will be handled in accordance with Articles 9 (Grievance Procedure) and 10 (Arbitration).  The Union shall withdraw NLRB Charge No. 20-CA-088282.  If necessary to close this matter, the parties agree to execute a mutually agreeable settlement agreement for submittal to the NLRB.
>
> . . .
>
> It is understood that the above items are contingent on Union ratification of the Tentative Agreement dated December 13, 2012.

ECF No. 14-7, PageID # 216.[2]

Article 9 of the 2008-11 CBA concerned the grievance procedure and provided in relevant part:

When any employee covered by this Agreement believes, or when the Union believes, that the Company has violated the expressed terms and conditions thereof, and that by reason of such violation the employee's or the Union's rights arising out of this Agreement have been affected adversely, the employee or the Union, as the case may be, shall be required to follow the procedure hereinafter set forth in presenting the grievance and having the grievance investigated and the merits thereof determined.

ECF No. 14, PageID # 123.

Article 10, which delineated the procedures for arbitrating grievances, provided in relevant part:

In the event a grievance concerning the application or interpretation of the expressed terms and conditions of the Agreement is not settled pursuant to the provisions of Article 9 and the Union gives notice in accordance with Section 9.7 of its desire to submit the grievance to arbitration, the Director-Human Resources or designated representative and the Business Manager or designated representative of the Union shall select an arbitrator within ten (10) days (exclusive of Saturdays, Sundays and/or holidays) after receipt by the Company of such notice.

ECF No. 14-1, PageID # 152.

On January 27, 2015, IBEW again demanded that Hawaiian

---

[2] The NLRB charge that IBEW was agreeing to withdraw did not relate to the SCT wage schedule issue.

Telcom arbitrate the wage rate for the SCT position.  See ECF No. 14, PageID # 133.  After counsel for Hawaiian Telcom informed IBEW that Hawaiian Telcom would not proceed to arbitration on the matter, see id., PageID # 134, IBEW filed its Complaint to Compel Arbitration in this court.  See ECF No. 1.

III.    **STANDARD OF REVIEW.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A movant must support his position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).  Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element
at trial.  See id. at 323.  A moving party without the ultimate
burden of persuasion at trial--usually, but not always, the
defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000).

        The burden initially falls on the moving party to
identify for the court those "portions of the materials on file
that it believes demonstrate the absence of any genuine issue of
material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors
Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp.,
477 U.S. at 323).  "When the moving party has carried its burden
under Rule 56(c), its opponent must do more than simply show that
there is some metaphysical doubt as to the material facts."
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 (1986) (footnote omitted).

        The nonmoving party must set forth specific facts
showing that there is a genuine issue for trial.  T.W. Elec.
Serv., Inc., 809 F.2d at 630.  At least some "'significant
probative evidence tending to support the complaint'" must be
produced.  Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv.
Co., 391 U.S. 253, 290 (1968)).  See Addisu, 198 F.3d at 1134 ("A
scintilla of evidence or evidence that is merely colorable or not

significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

## IV.        ANALYSIS.

The present motions require this court to determine whether IBEW's grievance regarding the wage schedule for the SCT position must be arbitrated. As a threshold matter, neither

party disputes this court's ability to decide the question of arbitrability posed by both motions.  See also AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651 (1986) (stating that substantive arbitrability is a question for the court); Int'l All. of Theatr. Stage Emp. & Moving Picture Techns. Artists, & Allied Crafts of the United States, Its Trusted Local 720 Las Vegas, Nevada v. InSync Show Prods., Inc., 801 F.3d 1033, 1041-42 (9th Cir. 2015) ("except where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter" (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010))(quotation marks omitted)).

To decide whether a valid arbitration agreement exists, the court looks to the "ordinary state-law principles that govern the formation of contracts" under the law of the state governing the contract.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

IBEW argues that section 36.10 of the 2008-11 CBA mandates that Hawaiian Telcom arbitrate the SCT position grievance, and that section 36.10 applied even though the CBA had expired by the time the SCT position was implemented.  See id., PageID # 131.  As noted earlier, section 36.10 stated in relevant part,

10

> Whenever a new job is created or the job content of an existing job is changed the Company will submit a job description to the Union.  If the rate for the job classification does not appear in Article 36 of the Agreement, it shall be determined jointly by the Company and the Union. . . . In the event that a joint agreement on a job classification cannot be reached within forty-five (45) days, the Company and the Union agree to begin Expedited Labor Arbitration Procedures in accordance with the American Arbitration Association rules within five (5) working days.

See ECF No. 14, PageID #s 124-25.  IBEW urges this court to broadly construe section 36.10 as surviving the 2008-11 CBA's expiration based on the statement in section 36.10 that it applies "[w]henever a new job is created."  See ECF No. 24, PageID # 273.  According to IBEW, "'Whenever' is a broad term and would, on its face, even include a period of time when there was no CBA in existence."  Id.

In Litton Financial Printing Division, Inc. v. National Labor Relations Board, 501 U.S. 190 (1991), the Supreme Court considered whether an arbitration clause in a CBA survived beyond the CBA's expiration.  The Court said:

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

Id. at 205-06.

None of the Litton factors is met here.  There is no dispute that Hawaiian Telcom's implementation of the wage schedule on December 21, 2011, occurred after the 2008-11 CBA expired on September 12, 2011.  See ECF No. 15, PageID # 221; ECF No. 14, PageID # 131.  Nor does IBEW contend that the right to arbitrate the SCT wage schedule accrued or vested while the CBA was still in effect, and then ripened when the SCT position was created after the CBA expired.  And IBEW fails to identify any "normal principles of contract interpretation" under which the arbitration clause could be said to have survived the expiration of the 2008-11 CBA.

IBEW's reliance on the use of the term "whenever" as establishing that the parties expected section 36.10 to survive beyond the expiration of the 2008-11 CBA is misplaced.  As a matter of contract interpretation, it cannot be reasonably said that the use of "whenever," a term common to contracts in general and used frequently in this CBA, by itself establishes that a contract term was meant to outlast the duration of the contract.  "The most natural reading of a contract that has defined endpoints . . . is that terms in the contract apply to events between [those endpoints]."  Int'l Broth. of Elec. Workers, Local 1200 v. Detroit Free Press, Inc., 748 F.3d 355, 358 (D.C. Cir. 2014) (quoting Des Moines Mailers Union, Teamsters Local No. 358

v. NLRB, 381 F.3d 767, 770 (8th Cir. 2004)).  A more reasonable interpretation of section 36.10 is that Hawaiian Telcom and IBEW intended "whenever" to refer to any period of time during the term of the CBA.

This court turns to whether section 36.10 was implemented as part of Hawaiian Telcom's LBAFO, in which event the arbitration provision may have applied to the wage schedule that was created in the LBAFO.  This court raised the issue with the parties because the LBAFO itself was unclear as to what, if any, parts of the 2008-11 CBA it was incorporating by reference.  However, as Hawaiian Telcom pointed out at the hearing on the motion, it could not have unilaterally implemented the arbitration provision in its LBAFO, even if it had wanted to.

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  AT & T, 475 U.S. at 648 (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)); Litton, 501 U.S. at 200-01.  In the particular context of labor law, because arbitration "typically requires parties to give up their economic weapons and submit to final and binding resolution of their disputes," "parties cannot be compelled to arbitrate grievances absent their explicit consent." Roosevelt Mem'l Med. Ctr. & Am. Fed'n of State, Cnty. & Mun. Emps., Montana State Council 9, 348 NLRB 1016, 1017 (N.L.R.B.

2006).  While an employer can unilaterally implement certain terms and conditions when the parties have reached a bargaining impasse, arbitration is not something an employer can unilaterally compel.  See, e.g., NLRB v. McClatchy Newspapers, Inc. Publisher of The Sacramento Bee, 964 F.2d 1153, 1154 (D.C. Cir. 1992) (Edwards, J., concurring) ("the Supreme Court has held that . . . there are certain limited, categorical exceptions (covering the statutory right to strike, extension of arbitration beyond the term of an agreement, union security, and withdrawal from multiemployer bargaining) which are beyond the scope of the impasse rule").

Hawaiian Telcom is correct that it could not have implemented section 36.10 as part of its LBAFO.  For this reason, the language in the "Terms of Employment Implemented January 1, 2012," which details what the LBAFO included, does not establish that section 36.10 was in effect at the time the SCT position was created.  See ECF No. 24-2; see also ECF No. 24-1, PageID # 277.  In any event, even if the court assumed that section 36.10 was implemented on January 1, 2012, it still would not have covered the creation of the SCT position.  See ECF No. 15, PageID # 221.  Section 36.10 applies "[w]henever a new job is created or the job content of an existing job is changed."  ECF No. 24-1, PageID # 300.  Because there is no dispute that the SCT position was created on December 21, 2011, its creation preceded any purported

14

implementation of section 36.10 on January 1, 2012.

Section 36.10 thus does not govern the parties' duty to arbitrate the SCT position grievance.

Alternatively, Hawaiian Telcom argues that the parties agreed to arbitrate the SCT position grievance in their Letter of Understanding, dated December 13, 2012.  See ECF No. 22, PageID # 269.  The Letter of Understanding provided in relevant part:

> This letter will confirm that the Company and Union have agreed to the following:
>
> 1.  Arbitration.  Grievances that arose between October 25, 2011 through December 31, 2012 will be handled in accordance with Articles 9 (Grievance Procedure) and 10 (Arbitration).  The Union shall withdraw NLRB Charge No. 20-CA-088282.  If necessary to close this matter, the parties agree to execute a mutually agreeable settlement agreement for submittal to the NLRB.

ECF No. 14-7, PageID # 216.

To construe the Letter of Understanding, this court looks to Hawaii law.  Under Hawaii law, when a contract or agreement is unambiguous, the terms should be interpreted according to their plain, ordinary, and accepted sense in common speech.  See, e.g., Koga Eng'g & Const., Inc. v. State, 122 Haw. 60, 72, 222 P.3d 979, 991 (2010).  When the meaning of an agreement is not clear on its face, "the ambiguity raises the question of the parties' intent, which is a question of fact that will often render summary judgment inappropriate."  Wittig v. Allianz, A.G., 112 Haw. 195, 201-02, 145 P.3d 738, 744-45 (Ct.

App. 2006) (citing Found. Int'l, Inc. v. E.T. Ige Construction, Inc., 102 Haw. 487, 497, 78 P.3d 23, 33 (2003); Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1145 (1984)); see also Laborers Health & Welfare Trust Fund for N. California v. Kaufman & Bd. of N. California, Inc., 707 F.2d 412, 418 (9th Cir. 1983) (citing Gillespie v. Travelers Ins. Co., 486 F.2d 281, 283 (9th Cir. 1973)).

Hawaiian Telcom urges this court to use extrinsic evidence to read the Letter of Understanding as excluding from its scope the SCT grievance.  Hawaiian Telcom points to its letter to IBEW of June 8, 2012, in which Hawaiian Telcom included the SCT dispute among a list of grievances that it was refusing to arbitrate.  See ECF No. 14-6, PageID # 213-14.  Hawaiian Telcom argues that this letter indicates that it never intended the Letter of Understanding to apply to the SCT dispute.

The language of the Letter of Understanding is unambiguous as to whether it encompasses the SCT dispute.  The Letter of Understanding states, "Grievances that arose between October 25, 2011 through December 31, 2012 will be handled in accordance with Articles 9 (Grievance Procedure) and 10 (Arbitration)."  ECF No. 14-7, PageID # 216.  The SCT position grievance was filed on February 23, 2012, clearly within the period set forth by the Letter of Understanding.  See ECF No. 14, PageID # 131.

Moreover, Hawaiian Telcom is not saying that the Letter of Understanding was inapplicable to every other dispute on the list of grievances in its letter of June 8, 2012.  It appears that at least one reason for the Letter of Understanding was to resolve the manner in which the listed grievances would be addressed.  If other matters indeed fell under the Letter of Understanding, this court questions what admissible evidence supports treating the SCT grievance differently.

The list of grievances preceded and is not part of the Letter of Understanding.  Hawaii law is clear that a court cannot consider parol evidence unless there is an ambiguity in the agreement.  "Where a writing is found to be clear and unambiguous and 'represents the final and complete agreement of the parties,' the parol evidence rule bars evidence of 'prior contemporaneous negotiations and agreements that vary or alter the terms of a written instrument.'"  United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc., 113 Haw. 127, 140-141, 149 P.3d 495, 508-509 (2006); see also Honolulu Fed. Sav. & Loan Ass'n v. Murphy, 7 Haw. App. 196, 200, 753 P.2d 807, 811 (1988).  "The court should look no further than the four corners of the document to determine whether an ambiguity exists."  United Pub. Workers, 113 Haw. at 140, 149 P.3d at 508.

While the Letter of Understanding is unambiguous as to its inclusion of the SCT dispute, it is ambiguous as to whether

17

it requires the parties to submit the SCT position grievance to arbitration.  <u>See</u> ECF No. 14, PageID #s 125-26.  The Letter of Understanding does not explicitly state that the SCT position grievance must be arbitrated.  Instead, it provides that grievances during this period will be "handled in accordance with Articles 9 (Grievance Procedure) and 10 (Arbitration)."  IBEW asks the court to infer from this language that the parties intended to submit the grievance to arbitration under Article 10.  <u>See</u> ECF No. 24, PageID # 274.  But what the parties actually meant by "will be handled" in accordance with these Articles is unclear and open to several interpretations.

One possible interpretation of the Letter of Understanding is that IBEW, having already grieved the dispute under Article 9, was entitled to proceed to arbitration under Article 10.  This, of course, supports IBEW's motion for summary judgment.  But another possible interpretation of "will be handled" by Articles 9 and 10 is that the disputes had to be commenced pursuant to the Letter of Understanding.  In that event, IBEW would have had to begin anew with the Article 9 grievance process before seeking arbitration pursuant to Article 10.  This raises the possibility that the dispute might have been satisfactorily resolved during the new grievance process, mooting out any need for the parties to arbitrate the dispute.  Furthermore, under this interpretation, Hawaiian Telcom would not

have had a duty to arbitrate the SCT position grievance until the dispute had proceeded all the way through the new Article 9 grievance process without satisfactory resolution.  Only then could the court compel arbitration.  The language of the Letter of Understanding thus permits conflicting interpretations that prevent this court from concluding that the parties agreed to arbitrate the SCT position grievance.

Even if, in the Letter of Understanding, the parties committed to arbitrating their SCT dispute under Articles 9 and 10, there is a dispute as to whether IBEW's alleged violations of the Article 9 procedures precluded arbitration under Article 10. In Hawaiian Telcom's letter to IBEW of March 9, 2012, Hawaiian Telcom took the position that it was denying IBEW's grievance because "the Union failed to follow the grievance process required by the CBA."  See ECF No. 14-5, PageID # 211.  Hawaiian Telcom explained that IBEW had not timely filed the grievance in accordance with section 9.2.  Id.  It thus can be inferred from Hawaiian Telcom's letter that, even if Hawaiian Telcom agreed to apply Articles 9 and 10 to the SCT position grievance, Hawaiian Telcom nonetheless believed it did not have to arbitrate the matter under Article 10 because IBEW had allegedly failed to properly grieve it in accordance with Article 9.

Hawaiian Telcom urges this court to find that the Letter of Understanding merely reflects its intent to process

19

certain grievances, "not that they would automatically proceed to arbitration regardless of any defenses the Company may have." See ECF No. 22, PageID # 269.  According to Hawaiian Telcom, it only agreed to this because it could not legally repudiate the grievance process itself.  See, e.g., Sterling Drug, Inc., Hilton-Davis Chem. Co. Div., 185 NLRB 241, 1970 WL 25333, at *4 (N.L.R.B. 1970) ("an employer cannot abandon established channels for bargaining over employee grievances and thus effectively avoid his bargaining obligation and undercut the union's status as exclusive representative")).  This argument, albeit a correct statement of law, is undercut by the Letter of Understanding's inclusion of not only the grievance procedures provided for in Article 9, but also the arbitration procedures in Article 10. If, as Hawaiian Telcom says, the parties only agreed to process the grievances, there would be no need for them to implement Article 10 as well.

Based on the present record, neither party is entitled to summary judgment because genuine issues of material fact exist as to whether the parties agreed in the Letter of Understanding to arbitrate their SCT dispute.

Germane issues of material fact also preclude the grant of summary judgment to Hawaiian Telcom based on its argument that it could not have agreed to arbitrate the wage schedule because, under Article 10.6 of the 2008-11 CBA, an arbitrator had no

authority to alter the wage schedule.  Hawaiian Telcom says that it "did not agree to arbitrate the wage schedule applicable to the SCT position because it was part of its unilaterally implemented last, best and final offer and therefore under Article 10.6 the restriction on an arbitrator's ability to alter or amend or modify the terms of the agreement is directly applicable."  See ECF No. 18-1, PageID # 247.  Article 10.6 provides, "All decisions of the arbitrator shall be limited expressly to the terms and provisions of this Agreement and in no event may the terms of the Agreement, be altered, amended, or modified by the arbitrator."  ECF No. 14-1, PageID # 153.

Hawaiian Telcom's argument is essentially that it would not have agreed to arbitrate an issue that it clearly would have prevailed on at arbitration.  Even if Hawaiian Telcom is correct that an arbitrator cannot invalidate the wage schedule, this argument goes to the merits of the grievance, and not to whether the parties agreed to submit the grievance to arbitration.  In deciding the present motions for summary judgment, this court does not weigh the wisdom or desirability of submitting the wage schedule dispute to arbitration, or even whether arbitration is pointless because the outcome is certain.  The court simply considers whether either party has established the absence of a genuine issue of material fact as to whether they agreed to arbitrate the SCT position grievance.  Because the parties have

not, summary judgment is not warranted here.

**V.      CONCLUSION.**

For the reasons set forth above, IBEW's Motion for Summary Judgment and Hawaiian Telcom's Countermotion for Summary Judgment are both denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 22, 2016.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

International Brotherhood of Electrical Workers, Local 1357 v. Hawaiian Telcom, Inc., Civ. No. 15 00221 SOM/KJM; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S COUNTERMOTION FOR SUMMARY JUDGMENT